JONATHAN K. LEVINE (SBN: 220289)
ELIZABETH C. PRITZKER (SBN: 146267)
HEATHER P. HAGGARTY (SBN: 244186)
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
hph@pritzkerlevine.com

*Attorneys for Plaintiff Maria Leon*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA LEON, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>INTUIT, INC.<br><br>　　　　　　Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Maria Leon ("Plaintiff"), by and through her undersigned attorneys, hereby complains against defendant Intuit, Inc. ("Defendant"), on behalf of herself and all others similarly situated, as follows.  Plaintiff's allegations are based upon information and belief, except as to her own actions, which are based on personal knowledge.   Plaintiff's information and belief is based on the investigation of her undersigned counsel, and the facts that are a matter of public record, as follows:

## NATURE OF THE ACTION

1. Intuit, the market leader in the electronic tax filing business, has engaged in false and deceptive advertising, diverting lower-income tax payers who are eligible to receive free tax preparation and filing services under the Internal Revenue Service's ("IRS") Free File program ("Free File Program") to its paid TurboTax products.  Legally obligated under an agreement with the IRS to provide free tax filing services to tax payers who fall in the bottom 70% of earners, Intuit deliberately hid access to its TurboTax Free File Program by locating the service on a different website and using code to block search engine access to that very website.

2. Then, to further confuse and mislead its 36 million TurboTax customers, the majority of whom are likely qualified for the IRS Free File Program, Intuit also launched a "free" product on its main website and widely advertised its "free" tax services to draw taxpayers to that website, as opposed to the separate (and largely hidden website) for the Free File Program.  Once the taxpayer entered in extensive personal information, TurboTax would inform the applicant that they had to pay a fee in order to submit their tax returns.  As a result of its misrepresentations and deceptive practices, Intuit has profited handsomely.

3. By evading and violating its obligations under its agreement with the IRS, Intuit coopted a free program that was intended to minimize the burden of filing taxes, and instead, through misrepresentations and deceptive practices, made billions of dollars on the backs of millions of lower-income taxpayers who were legally entitled to receive free tax services.

4.      Plaintiff, on behalf of herself and others similarly situated, brings this action for injunctive and equitable relief to put an end to Intuit's misrepresentations and deception, and for damages.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter under the Class Action Fairness Act pursuant to 28 U.S.C. § 1332 because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys fees' and costs; and (3) Intuit and class members are domiciled in different states.

6.      This Court has personal jurisdiction over Intuit because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the conduct at issue in this occurred in this District.

## INTRADISTRICT ASSIGNMENT

8.      Assignment to the San Francisco Division is appropriate under Local Rule 3-2(c) because three related cases against Intuit, alleging substantially the same facts, are now pending before Judge Charles R. Breyer in the San Francisco courthouse.  *See Sinohui v. Intuit, Inc.*, 19-cv-02546-CRB; *Dohrmann v. Intuit, Inc.*, 19-cv-02566-CRB; *Allwein v. Intuit, Inc.*, 19-cv-02567-CRB.

## PARTIES

9.      Plaintiff Maria Leon is a citizen and resident of Oakland, California.

10.     Defendant Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

## PLAINTIFF'S EXPERIENCE

11.     Plaintiff is a self-employed filmmaker who resides in Oakland, California. For the 2015 tax year, Ms. Leon's income was under the maximum allowed by Intuit to qualify to use the IRS free file Program as administered by Intuit.  Ms. Leon used TurboTax

to file her 2015 tax returns.

12.    Before purchasing TurboTax e-filing services for her 2015 returns, Ms. Leon saw representations by Intuit on the internet that its tax preparation services were "free."  Intuit's representations caused Ms. Leon to decide to use the TurboTax website and she input all of her tax information.  However, TurboTax was not free, and instead, at the end of the process, Intuit charged her for its e-filing services.

13.    Had Intuit not misrepresented the nature of it tax preparation and e-filing services and informed Ms. Leon of its intent to assess fees, Ms. Leon would not have navigated to TurboTax's website or input her information.  Had Intuit made its free tax filing product accessible, Ms. Leon would have used it, rather than the paid version.

## COMMON FACTUAL ALLEGATIONS

**I.**    **As Part of the IRS' Free File Program, Intuit Agrees to Provide Free Tax Services**

14.    The IRS established the Free File Program to help lower-income and economically disadvantaged taxpayers prepare and file their taxes more easily.  The program allows taxpayers who earn less than $66,000 a year to receive free tax preparation and filing services from one of the companies that has contracted with the IRS to provide such services, and is available to 90-100 million taxpayers *each year*.

15.    In 2002, Intuit and other tax preparation companies formed a non-profit corporation called the "Free File Alliance",[1] and entered into an agreement with the IRS (the "Free File Agreement"[2]), agreeing to provide free online tax return preparation and filing services to eligible taxpayers.  The objectives of the Free File Agreement were to ensure "access to a free and secure electronic preparation and filing option", to make "tax return preparation and filing easier…reducing the burden on individual taxpayers" and to further IRS statutory goals of increasing the number of e-filings.[3]

---

[1] The Free File Alliance later changed its name to Free File, Inc.
[2] The "Free File Agreement" includes all subsequent renewals and Memorandums of Understanding.
[3] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File*

16.    In exchange, the IRS agreed to not compete with these entities in the electronic tax filing business by offering its own free tax filing service and to provide a link from the IRS Free File web page to the free services web page of each member of the Free File Alliance.[4]  This was a huge win for these member companies who had spent millions of dollars lobbying to prevent the IRS from competing in the electronic tax filing market and would now receive a marketing boon, drawing millions more users to these companies' websites.[5]  Intuit's TurboTax, the undisputed market leader with 60% of the do-it-yourself tax market, would benefit significantly.[6]

17.    Intuit's obligations' under the Free File Agreement were crystal clear: it had to offer completely free tax services, including *all necessary tax forms*, to eligible Americans, maximize public awareness of the Free File Program, and make certain that "*taxpayers [would] not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service*."[7] In addition, the Free File Program products had to "be equivalent to those offered for sale on the commercial market and thus [were] expected to have all of the features and operability of those commercial products."[8]    Finally, Intuit and the other member companies agreed to a prohibition on marketing paid services: "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File

_____

*Your    Taxes*,    PROPUBLICA    (Apr.    22,    2019,    5:00    AM), https://www.propublica.org/article/turbotax-just- tricked-you-into-paying-to-file-your-taxes.
[4]    2002    Free    Online    Electronic    Tax    Filing    Agreement    (Oct.    30,    2002), https://www.irs.gov/pub/irs-utl/2002-free-online-electronic-tax-filing-agreement.pdf [hereinafter "2002 Free File Agreement"].
[5] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your    Taxes*,    PROPUBLICA    (Apr.    22,    2019,    5:00    AM), https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes.
[6] Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines* (April 26, 2019),    https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines;Brad Smith (CEO of Intuit), Intuit's CEO on Building a Design-Driven Company, Harvard Business Review (January-February 2015), https://hbr.org/2015/01/intuits-ceo-on-building-a-design-driven-company.
[7] 2002 Free File Agreement, sec. VI.A.; IRS' Intent to Enter an Agreement With Free File Alliance,    LLC    (i.e.    Free    File    Alliance),    67    Fed.    Reg.    at    67248, https://www.federalregister.gov/documents/2002/11/04/02-27909/irs-intent-to-enter-into-an-agreement-with-free-file-alliance-llc-ie-free-file-alliance [emphasis added].
[8] *Id.*

Program" for eligible federal tax filers.[9]

18.    Over the sixteen years that Intuit has participated in the Free File Program, these obligations have been reiterated and reaffirmed in the subsequent agreement renewals and Memorandums of Understanding, including in the most recent 2018 renewal which extended the Free Form Agreement to October 31, 2021.[10]  Bottom line: The Free File Program was unequivocally intended to provide "online tax preparation and filing services to taxpayers least able to afford e-filing tax returns at no cost to such taxpayers….,[to] make tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations."[11]

## II.    Intuit's Deceptive Practices and Misrepresentations

19.    While the Free File Program was a win for Intuit because it finally eliminated the threat that the government would launch its own free tax filing program, it also threatened to reduce profits by losing a significant percentage of customers to the Free File Program.  So Intuit came up with a multi-prong scheme to ensure that taxpayers, eligible for the Free File Program, would actually pay for TurboTax's tax services.

20.    To create confusion, Intuit set up two programs with similar and misleading names: the TurboTax Freedom Edition and TurboTax Free Edition.

21.    TurboTax Freedom Edition ("Freedom Edition") (shown below) provides completely free services, pursuant to the Free File Agreement, for eligible taxpayers who (a) have an AGI of $34,000 or less, (b) are eligible for the Earned Income Tax Credit, or (c) are on active duty and have an AGI of $66,000 or less.  The Freedom Edition facilitates the electronic filing of federal tax returns, regardless of complexity, and provides free use of not only the basic IRS Form 1040, but also 125 additional federal tax forms, including

---

[9] Free File Eighth Memorandum of Understanding (Oct. 31, 2018), art. 4.32.5, [hereinafter "Eighth MOU"], https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf;  Free File Seventh Memorandum of Understanding (Mar. 6, 2015), art. 4.33.1-.4.33.2, [hereinafter "Seventh MOU"], https://www.irs.gov/pub/irs-utl/2015-seventh-free-file-mou.pdf.
[10] Eighth MOU, *supra* note 9.
[11] Free File First Memorandum of Understanding (Dec. 20, 2005), [hereinafter "First MOU"], https://www.irs.gov/pub/irs-utl/2006-first-ff-mou.pdf.

but not limited to, Schedules 1 through 6, 1099-MISC, and 1040 Schedules A, B, C, D, E, EIC, F, H and J.[12]  The Freedom Edition is complete and provides every form an eligible taxpayer would need.  For free.



22.     However, the Freedom Edition is not featured on TurboTax's homepage.  In fact, it's not even on the same website as all other TurboTax products.  Rather, it was hidden on a separate website that was impossible to find because, until April 28, 2019, Intuit had added code to its Freedom Edition website that blocked Google and other search engines from listing TurboTax's Freedom Edition.[13]  Instead of ensuring access to "taxpayers least able to afford e-filing tax returns at no cost to such taxpayers" and making "tax return preparation and filing easier and reduc[ing] the burden on individual taxpayers,

---

[12] TurboTax Freedom Edition, https://turbotax.intuit.com/taxfreedom/ (last visited May 19, 2019).
[13] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, PROPUBLICA, *supra* note 5.  After a series of scathing ProPublica articles exposed TurboTax's schemes to charge taxpayers who should have been receiving free tax preparation and filing services, Intuit changed its code such that a search for TurboTax's Freedom Edition now lists the website. Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines* (April 26, 2019), https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines.

particularly the economically disadvantaged and underserved populations", Intuit did the opposite, diverting and misleading the very taxpayers it promised to protect in order to maximize its profits.

23.    According to ProPublica, if a taxpayer conducted a search online for "irs free file taxes", they would get a search result that listed the "TurboTax Free/Free IRS Fed Filing Online".[14]  Indeed, this search result mentioned "free" five times.



24.    Layering on one deception after another, this Intuit paid advertisement linked to another advertisement on its website that stated customers could file simple tax returns for "FREE GUARANTEED.  $0 Fed.  $0 State.  $0 To File."[15]

---

[14] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, PROPUBLICA, *supra* note 5.
[15] *Id.*



25.    This product on the TurboTax website is called TurboTax Free Edition ("Free Edition").   It was, and continues to be, the bait used to lure in taxpayers who reasonably believe that they can file for free.  Taxpayers are instructed to create an account, enter all of their tax information, and then are informed that they will have to pay to file their taxes even if they are eligible for the Free File Program.

26.    To test how "free" the Free Edition product actually was, ProPublica's authors ran different scenarios for lower-income workers in the Free Edition. In one scenario, after inputting extensive personal information, a housekeeper earning $29,000 was informed that he would have to upgrade and pay $119.99 because he was self-employed.[16]

---

[16] *Id.*

27.    In another scenario, a cashier at Walgreen's without health insurance was told he would have to pay $59.99 to file because an extra form is required if a person doesn't have health insurance and "TurboTax Free Edition does not cover this situation."[17] Of course, this is exactly the kind of situation that is covered by TurboTax Freedom Edition and the Free File Program.  Yet, Intuit did not redirect the applicant to the applicable programs.[18]

---

[17] *Id.*
[18] *Id.*

To accurately complete your taxes,
you need to upgrade to **TurboTax
Deluxe**

Why do I need to upgrade?

**You have Schedule 4, Other Taxes,** and that's just one of the
reasons the IRS requires you to file Form 1040.

TurboTax Free Edition does not cover this situation

28.    Digging deeper, ProPublica found that, as soon as they clicked on the "FREE GUARANTEED" option on the website, Intuit source code on the TurboTax website tagged the person as NONFFA, meaning "Non Free File Alliance."[19]   Clearly, Intuit never intended its "FREE GUARANTEED" option to be free; it intended for any taxpayer, even if they were eligible for free tax services, to pay to have their tax return prepared and filed by TurboTax.

```
ch: /personal-taxes/online/
cc: USD
c2: 2019-04-12T17:44:20.316Z
c5: NONFFA
c6: TT.com
c7: TTCamp
c9: 582c1659-f678-4316-a059-29ee9324cf4c
c14: performance|domComplete
```

29.    After this article was published, ProPublica heard from dozens of people who could not find the TurboTax Free File services and instead, ended up paying to file their return despite their low-income and eligibility for the Free File Program.[20]   Their

---

[19] *Id.*
[20] Ariana Tobin, Justin Elliott and Meg Marco, *Here Are Your Stories of Being Tricked Into Paying by TurboTax. You Often Need the Money*, PROPUBLICA (April 26, 2019), https://www.propublica.org/article/here-are-your-stories-of-being-tricked-into-paying-by-

stories included:[21]

    a.    A woman receiving chemotherapy with two disabled sons, a husband recently diagnosed with Parkinson's disease and a family income of only $32,877. She had to pay $200 to file her taxes.

    b.    Another woman stated: "My husband makes around $19,000 on disability and I make around $4,400 as commissions. [TurboTax] insisted because we sold a piece of property last year, despite the fact that it was a loss, we still had to pay because it was an extra form." They paid $99.98, the equivalent of a week's worth of groceries for her family.

    c.    An active duty member of the armed services was charged $96 to file a tax return.

    d.    A man earning $5,000 a year was charged $103.95 to file a tax return.

    e.    A K-1 contractor who made only $14,500 was charged $169 to file her return. "That's a whole 1% of my income. How are they allowed to lie like this?"

    f.    A graduate student who made less than $10,000 was charged over $100 to file. "This feels like calculated fraud on [TurboTax's] part."

    g.    An 87-year-old on social security with an AGI of $11,000 had to pay $124.98 to file her taxes.

30.    Even though the taxpayers above met Intuit's stated minimums to qualify for the TurboTax Free File Program and Intuit had all of their personal information to make that determination, Intuit charged every one of these people in dereliction of its duties and legal obligations under the Free File Agreement.

31.    When this story broke, many taxpayers reported contacting TurboTax and being told by TurboTax customer service that the stories were "fake news" and that the

---

turbotax-you-often-need-the-money.
[21] *Id.*

IRS, not Intuit, was responsible for the Freedom Edition.[22]

32.    TurboTax's refusal to take responsibility for its actions was raised to a new level when, on May 15, 2019, Intuit sent to its employees an 11 minute video of its CEO Sasan Goodarzi, making the fallacious assertion that Intuit's marketing practices were actually intended to educate taxpayers on all the possible options so that they could choose the best product for themselves.[23]

33.    In that video, Goodarzi claims that: "*As you know we advertise a lot. We've all seen them: 'free free free.' Because we advertise so much, our experience and our common sense tells us that the majority of people doing internet searches for the words 'TurboTax free tax preparation' are looking for TurboTax free product. Not the one we offer through the IRS Free File Program.*"[24] The notion that taxpayers searching TurboTax free tax preparation are actually hoping to use a TurboTax product that requires them to pay to prepare and file their taxes is absurd.

34.    Goodarzi further states that because Intuit's search parameters, blocking Google and other search engines from listing TurboTax Freedom Edition, have been "misinterpreted", Intuit changed the search parameters, unblocking TurboTax Freedom from search engines.[25] Goodarzi's attempt to justify Intuit's fraudulent concealment and subsequent removal of code that hid the Free File website falls flat and unfortunately, for eligible taxpayers, eleven days after the April 15th tax filing deadline.

35.    Under the Free File Agreement, Intuit had a contractual obligation to advertise the Free File Program to "maximize public awareness" and to provide easy access to free tax services for low-income and economically disadvantaged taxpayers.[26] Intuit

---

[22] Justin Elliott and Meg Marco, *Listen to TurboTax Lie to Get Out of Refunding Overcharged Customers*, PROPUBLICA (May 9, 2019), https://www.propublica.org/article/listen-to-turbotax-lie-to-get-out-of-refunding-overcharged-customers.
[23] Justin Elliott and Lucas Waldron, *Intuit CEO in Internal Video: Hiding Free TurboTax Was In "Best Interest of Taxpayers"*, PROPUBLICA (May. 15, 2019), https://www.propublica.org/article/intuit-ceo-in-internal-video-hiding-free-turbotax-was-in-best-interest-of-taxpayers.
[24] *Id.*
[25] *Id.*
[26] 2002 Free File Agreement, sec. VI.A. *supra* note 4.

was not permitted to engage in any marketing, soliciting or selling as part of the Free File Program.[27]  In the event that a person was not eligible for the Free File Program, Intuit was required to inform the person why they were not eligible and to first redirect the taxpayer to other Free File products that they might be eligible for before offering paid services.[28]

36.    Instead of performing its contractual obligations with transparency and honesty, Intuit created two confusing, similarly named "free" products; suppressed the online accessibility of the TurboTax Freedom Edition, the truly free product; aggressively marketed and intentionally misrepresented the TurboTax Free Edition; deliberately lured in lower-income taxpayers to use the TurboTax Free Edition with the promise of free tax services; and then imposed bogus charges on taxpayers eligible for the IRS Free File Program.

37.    Not surprisingly, the Free File Program, which was launched in 2003, and reached its peak usage in 2005 has since declined.  In 2018, only 2.5% of the 100 million eligible taxpayers used the program, due in no small part to Intuit's and other member companies' efforts to manipulate the Free File Program to maximize their revenues while bilking low-income taxpayers, many of whom are elderly, disabled, students, self-employed and the military.[29]

38.    As a result of Intuit's intentionally deceptive practices and misrepresentations, Plaintiff and Class members have suffered harm while Defendant has been unjustly enriched.  As of 2018, Intuit earned $2.5 billion in revenue from its TurboTax segment, a $300 million increase from 2017 and a $500 million increase from 2016.[30]

---

[27] Eighth MOU, art. 4.32.5; Seventh MOU, art.4.33, *supra* note 9.
[28] Eighth MOU, art. 4.19.2, *supra* note 9.
[29] *National Taxpayer Advocate Delivers Annual Report to Congress: Addresses Impact of Shutdown; Urges More Funding for IT Modernization*, I.R.S. (Feb. 12, 2019), https://www.irs.gov/ newsroom/national-taxpayer-advocate-delivers-annual-report-to-congress-addresses-impact-of- shutdown-urges-more-funding-for-it-modernization.
[30] Intuit Inc., Annual Report (Form 10-K), at 40 (Fiscal Year Ended 2018), https://s21.q4cdn.com/374309911/files/doc_financials/annual_reports/2018/2018-Annual-Report-on-Form-10-K-(PDF).pdf.

# CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) of the, on behalf of the following Class and Subclass:

## Class

All Free File Program-eligible persons or entities in the United States who paid to use a TurboTax product to file an online tax return for the 2015 through present tax filing years.

## Subclass

All individuals in California who between 2015 and the present, paid a fee to file a federal income tax return through TurboTax, and qualified to file such a tax return for free under the IRS Free Filing.

40.     The following persons and entities are excluded from the Class: Intuit and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation.  Plaintiff reserves the right to modify, change or expand the class definition, including proposing additional subclasses, based upon discovery and further investigation.

41.     **Numerosity**.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time prior to discovery, Plaintiff believes that there are hundreds of thousands of Class members.

42.     **Typicality**.  Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff and other Class members paid Intuit a fee to file a federal income tax return through TurboTax, and would not have done so had Intuit refrained from making fraudulent misrepresentations.  As a result, Plaintiff and the Class sustained damages and injury arising out of Defendant's common course of conduct in violation of law as complained herein. The injuries and damages of Plaintiff and each member of the Class were directly caused by Defendant's wrongful conduct as alleged herein.

43.     **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in complex

class action litigation.

44.    **Commonality and Predominance**.  Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are whether:

a.    Whether Plaintiff and Class members are third party beneficiaries to the Free Filing Agreement;

b.    Whether Intuit knowingly failed to comply with, and/or breached its obligations under the IRS' Free File Program;

c.    Whether Intuit engaged in fraud or fraudulent concealment;

d.    Whether Intuit's website and/or advertising of the Free Edition is false and misleading to reasonable consumers;

e.    Whether Intuit's online representations that its TurboTax service was guaranteed to be free were designed to, and did, induce Plaintiff and Class members to use TurboTax, and spend time gathering and inputting factual details to submit their tax returns, before being informed that Intuit's services were not actually free;

f.    Whether Intuit's online representations that its TurboTax service was guaranteed to be free would be important to a reasonable consumer's decision as to whether to use TurboTax to prepare and file a tax return;

g.    Whether Intuit's online representations that its TurboTax service was free constituted bait-and-switching advertising;

h.    Whether Intuit engaged in other improper conduct in furtherance of its misrepresentations, including

manipulation of software source code and online ad placements to impede low-income taxpayer' ability to discover and navigate to its free filing website;

i.  Whether Intuit violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.;

j.  Whether Intuit violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.;

k.  Whether Intuit violated the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.;

l.  Whether Intuit was unjustly enriched by its unlawful conduct;

m.  Whether Plaintiffs and Class members suffered injury, including ascertainable losses, as a result of Intuit's false and misleading advertising, and unlawful, unfair, fraudulent or deceptive acts or practices;

n.  Whether Plaintiff and Class members are entitled to actual damages, statutory damages, restitution, equitable, injunctive or other relief as warranted; and

o.  Whether Intuit should be enjoined from continuing to perpetrate its scheme herein.

45.    **Superiority**.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual class member's claim is small relative to the complexity of the litigation, and because of Intuit's financial resources, Class members are not likely to pursue legal redress individually for the violations detailed in this complaint. Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create the potential for inconsistent and contradictory rulings. By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go

unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

46.     **Injunctive Relief.** Class certification is also appropriate under Rules 23(b)(2) because Intuit has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

**COUNT I**
**Intentional Misrepresentation**
**(On Behalf of the Class)**

47.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the class under California law for relief against Defendant.

48.      In the course of conducting its business of providing tax preparation and filing services, Intuit intentionally made material misrepresentations to Plaintiff and Class members.

49.     Intuit falsely represented that its TurboTax service was guaranteed to be free, for the purpose and with the effect of inducing Plaintiff and Class members to provide detailed tax-related information on Intuit's online TurboTax portal. At the end of that process, Intuit revealed that its services were not, in fact, free and assessed Plaintiff and Class members a substantial fee.

50.     Intuit knew that the misrepresentations alleged herein were false at the time Intuit made them.

51.     In making the misrepresentations alleged herein, Intuit intended that Plaintiff and Class members rely on them and purchase its TurboTax services.

52.     Plaintiff and Class members reasonably and justifiably relied to their detriment on Intuit's intentional misrepresentations.

53.     Intuit's false representations that its tax services would be free are objectively material.  A reasonable person would attach importance to them and, in making purchase decisions, would be induced to act on the information Intuit provided. Reliance

on Intuit's false representations may, therefore, be presumed as a matter of law.

54.     Intuit's intentional misrepresentations directly and proximately caused Plaintiff and class members to incur ascertainable losses, by paying for TurboTax services.

55.     Intuit directly benefited from, and was improperly enriched by, its systemic intentional misrepresentations.

56.     Intuit acted with malice by engaging in the conduct alleged herein, which was specifically intended by Intuit to cause substantial injury to Plaintiff and Class members.

57.     Intuit's conduct alleged herein constitutes fraud because it involved intentional misrepresentations, deceit, and concealment of material facts known to Intuit, and was done with the intent to cause injury to lower-income individuals in search of free tax preparation and filing services.

58.     Plaintiff and Class members are entitled to actual and punitive damages in an amount to be determined at trial.

## COUNT II
### Fraud or Fraudulent Concealment
### (On Behalf of the Class)

59.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the Class under California law for relief against Defendant.

60.     Defendant fraudulently concealed and suppressed material facts regarding Plaintiff's and Class members' eligibility to use the fully-functional free tax product offered by TurboTax—TurboTax Freedom Edition. Instead, Intuit diverted its customers who qualified for the Free File Program to the TurboTax Free Edition, a product with limited functionality, and fraudulently misrepresented that the TurboTax paid products were necessary in order to complete tax preparation and filing—products that caused Plaintiff and Class members to expend monies where they otherwise would not if Intuit had disclosed the existence, functionality and/or applicability of its Freedom Edition product.

61.    Intuit had a duty to disclose the existence of its Freedom Edition product, the fact that the Freedom Edition could be used to prepare and file simple to complicated taxes (unlike the Free Edition), and that the Freedom Edition was offered free of charge as a result of the Free File Program.

62.    Intuit had exclusive and/or far superior knowledge and access to the facts regarding the Free File Program and the existence of its Freedom Edition product than Plaintiff and Class members, and Defendant knew the facts regarding its various products that were not known to or reasonably discoverable by Plaintiff and Class members.

63.    Intuit intentionally concealed the foregoing from Plaintiff and Class members and made incomplete or fraudulent representations about the availability, applicability and cost of its TurboTax products, while purposefully withholding material facts regarding the eligibility of Plaintiff and Class members to use the Freedom Edition for free preparation and filing of simple to complicated taxes that contradicted these representations.

64.    A reasonable person purchasing online tax preparation and filing services would consider these misrepresentations, omissions and concealed facts material because they would be relied on, and because they directly impact the prices paid by consumers, including Plaintiff and Class members. The cost of services is a material concern to a consumer, particularly when that consumer is entitled to those services for free. Plaintiff and Class members would not reasonably expect Intuit to take steps to actively prevent them from accessing the free TurboTax Freedom Edition, deceive them about the existence and/or applicability of the Freedom Edition and/or the Free File Program, and/or use bait-and-switch tactics to pressure filers entitled to free services to unnecessarily pay for Defendant's paid products.

65.    Intuit concealed and suppressed the distinction between the Freedom Edition and the Free Edition to falsely convince Free File Program-eligible filers that they were unable to prepare and file their taxes for free, despite Defendant's participation in the Free File Program, and to charge Plaintiff and Class members for tax preparation and filing

through other TurboTax paid products.

66.     Defendant fraudulently misrepresented, omitted, and/or actively concealed and suppressed these material facts, in whole or in part, to protect its profits. Defendant concealed these facts at the expense of Plaintiff and Class members, all the while reaping the benefits of the IRS's agreement to refrain from offering its own free filing services as a result of Intuit's agreement to participate in the Free File Program.

67.     Plaintiff and Class members were unaware of these fraudulent misrepresentations and/or omitted or concealed material facts, and would not have paid Intuit to prepare and file their returns had they known of Defendant's fraudulent misrepresentations and/or omitted, concealed or suppressed facts.

68.     Had they been aware of the existence, functionality and/or applicability of the TurboTax Freedom Edition, or the costs associated with the use of the TurboTax Free Edition and associated product upgrades, Plaintiff and Class members would not have paid Intuit to prepare and file their taxes, would have received free services through the Freedom Edition, and/or would have used another provider entirely.

69.     Because of Intuit's fraudulent misrepresentations and/or omitted or concealed material facts, Plaintiff and members of the Classes sustained damage because they paid for services they should have received—and Defendant agreed with the IRS to offer—for free. Intuit made these fraudulent misrepresentations and/or omitted or concealed material facts in order to artificially inflate profits at the expense of Plaintiff and Class members.

70.     Accordingly, Defendant is liable to Plaintiff and members of the Classes for damages in an amount to be proven at trial.

71.     Intuit's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, and with the aim of enriching Defendant. Defendant's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, and targeted at those filers most in need of free services, warrants an assessment of punitive damages in an amount

sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
### Unjust Enrichment
### (On Behalf of the Class)

72.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the Class under California law for relief against Defendant.

73.    Intuit made false representations to Plaintiff and Class members which Intuit did not intend to keep, and which Intuit in fact did not keep, to induce Plaintiff and Class members to purchase Intuit's TurboTax services. Plaintiff and Class members reasonably relied on Intuit's false promises and did not receive the free tax preparation and filing services that Intuit promised them.

74.    Intuit manipulated its software source code to prevent consumers from discovering its "free file" website though an internet search, steering them instead to its website with the false representations. Further, Intuit made it impossible for consumers to navigate directly from the latter site to its actual "free file" site, and deliberately failed to inform consumers of their eligibility to file their tax returns for free even after they shared information with Intuit demonstrating such eligibility.

75.    By its deceptive, misleading, and improper conduct alleged herein, Intuit obtained money from, and was unjustly enriched at the expense of, Plaintiff and Class members.

76.    It would be inequitable and unconscionable for Intuit to retain the profits, benefits, and other compensation it obtained through its deceptive, misleading, and improper conduct.

77.    Plaintiff and Class members are entitled to restitution or disgorgement of, or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Intuit through its deceptive, misleading, and improper conduct.

**COUNT IV**
**Breach of Contract**
**(On Behalf of the Class)**

78.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the Class under California law for relief against Defendant.

79.     Intuit, through its membership in the Free File Alliance, entered into a valid and binding contract, the Free File Agreement, with the Internal Revenue Service to provide free tax preparation and filing services to low-income taxpayers and to "clearly list" its "free customer service options."

80.     The Free File Agreement was for the express and intended purpose of providing lower-income Americans, like Plaintiff, with free tax filing services. The Free File Agreement states, in pertinent part, that "the scope of this program is focused on covering the taxpayers least able to afford e-filing their returns on their own." The agreement further states that "the federal government has pledged to not enter the tax preparation software and e-filing services marketplace" in consideration for the promise of Intuit, among other entities, to "cover[] the taxpayers least able to afford e-filing their returns on their own."

81.     Plaintiff and Class members, accordingly, are third-party beneficiaries of the Free File Agreement.

82.     Intuit breached the Free File Agreement, and its obligations to Plaintiff and Class members, by, among other things:

    a.     failing to comply with section 2.1, which requires Intuit to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations";

    b.     failing to comply with section 2.3, which requires Intuit to "[p]rovide greater service and access to the Services to

taxpayers," with "Services" defined in section 1.13 as "free, online tax return preparation and filing of Federal individual income tax returns";

c.    failing to comply with section 4.15.14, which requires Intuit to "clearly list [its] free customer service options"; and

d.    failing to comply with section 4.32.5, which provides that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program . . . ."

83.    Intuit's breaches of the Free File Agreement caused Plaintiff and Class members to suffer ascertainable loss. Plaintiff and Class members qualified for free filing under the Free File Agreement but were assessed a fee by Intuit to file a tax return.

84.    Plaintiff and Class members are entitled to damages in an amount to be determined at trial. Plaintiff and Class members also seek an injunction requiring Intuit to comply with its obligations under the Free File Agreement.

85.    Plaintiff and Class members also seek an injunction requiring Intuit to comply with its obligations under the Free File Agreement.

## COUNT V
### Violations of the False Advertising Law,
### Cal. Bus. & Prof. Code § 17500 *et seq.* (FAL)
### (On Behalf of the Subclass)

86.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of the Subclass under California law for relief against Defendant.

87.    Intuit committed acts of untrue and misleading advertising, as defined by California Business and Professions Code section 17500, by representing that its TurboTax service was guaranteed to be free when that was not true, as Intuit, after luring Plaintiff and Subclass members to provide detailed tax-related information on its online TurboTax portal, charged them a substantial fee.

88.     Moreover, California Business and Professions Code section 17509 requires Intuit to conspicuously disclose the price of all of the services it requires consumers to purchase as a condition of sale. Intuit failed to do so, in violation of clearly established California law.

89.     Plaintiff and Subclass members had a legally protected interest in knowing from the outset, when they started to shop for tax preparation and filing services, the true prices of the services they chose to buy. Intuit quashed that interest in violation of clearly established California law.

90.     Intuit's misrepresentations deceived or tended to deceive the general public regarding the existence and nature of its "free" tax preparation and filing services.

91.     A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

92.     Unless restrained by this Court, Intuit will continue to engage in untrue and misleading advertising, as alleged above, in violation of sections 17500 and 17509 of the Business and Professions Code.  As a result of the foregoing, Plaintiff and Subclass members have been injured and have lost money or property and are entitled to restitution and injunctive relief.

## COUNT VI
### Violations of the Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200 *et seq.* (UCL)
### (On Behalf of the Subclass)

93.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the Subclass under California law for relief against Defendant.

94.     Intuit's deceptive advertising, as alleged herein, constitutes unlawful, unfair, and fraudulent business conduct in violation of the UCL.

95.     Intuit's conduct is unlawful because it constitutes a bait-and-switch scheme that violates federal regulations providing that, "[e]ven though the true facts are

subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception." 16 C.F.R. § 238.2.

96.     In addition to its unfair and misleading advertising, Intuit acted unscrupulously.

97.     In violation of the UCL's unfair prong, by manipulating its software source code to prevent consumers running internet searches for free or low-cost tax services from discovering its "free file" website, steering them instead to its website with the false representations; by making it impossible for consumers to navigate directly from the latter site to its actual "free file" site; and by deliberately failing to inform consumers of their eligibility to file for free even after they shared information with Intuit demonstrating such eligibility.

98.     Intuit's conduct in violation of the UCL directly and proximately caused Plaintiff and Subclass members to suffer injury and lose money and property. Plaintiff and Subclass members are, consequently, entitled to restitution and injunctive relief.

## COUNT VII
**Violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***
**(CLRA)**
**(On Behalf of the Subclass)**

99.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.  Plaintiff brings this claim on behalf of the Subclass under California law for relief against Defendant.

100.     Intuit is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "services" within the meaning of sections 1761(b) and 1770.

101.     Intuit's acts and practices, as alleged in this complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions (the sale of tax preparation and filing services). In violation of California Civil Code section 1770(a)(9), Intuit advertised its tax preparation and filing services with intent not to sell them as advertised.

102.    A reasonable consumer would attach importance to Intuit's misrepresentations alleged herein, and would be induced to act on the information in making purchase decisions.

103.    Intuit engaged in the acts and practices alleged herein with the intent to induce consumers to purchase Intuit tax preparation and filing services.

104.    Intuit's acts and practices did in fact result in the sale of Intuit tax preparation and filing services to Plaintiff and Subclass members, thereby causing them harm.

105.    Plaintiff and the Subclass thus seek actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

106.    Under California Civil Code section 1782(a), on her own behalf and on behalf of the Subclass, Plaintiff sent a CLRA notice to Intuit on May 24, 2019.  In the event the relief requested in the notice is not provided within 30 days, Plaintiff will amend this complaint to include a request for monetary damages pursuant to the CLRA.

107.    In accordance with California Civil Code section 1780(d), Plaintiff's CLRA venue declaration is attached hereto as Exhibit A.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class request judgment against Defendant as follows:

A.    Certifying the Class and Subclass under Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

B.    Awarding Plaintiff and Class members all damages or restitution to which they are entitled by law;

C.    Awarding Plaintiff and Class members pre- and post-judgment interest as provided by law;

D.    Enjoining Intuit from committing the unlawful acts and omissions described in this complaint;

E.      Awarding reasonable attorneys' fees and costs as provided by law, including under California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5; and

F.      Such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby requests a jury trial on any and all claims so triable.

DATED:  May 24, 2019                    Respectfully submitted,

                                        **PRITZKER LEVINE LLP**


                                        By:  /s/  *Jonathan K. Levine*
                                            Jonathan K. Levine (SBN: 220289)

                                        Elizabeth C. Pritzker (SBN: 146267)
                                        Heather P. Haggarty (SBN: 244186)
                                        180 Grand Avenue, Suite 1390
                                        Oakland, California 94612
                                        Telephone:  (415) 692-0772
                                        Facsimile:   (415) 366-6110
                                        Email:  jkl@pritzkerlevine.com
                                                ecp@pritzkerlevine.com
                                                hph@pritzkerlevine.com

                                        *Attorneys for Plaintiff Maria Leon*

# EXHIBIT A

DocuSign Envelope ID: 2F598C64-753D-40DD-8788-8F7743412622

JONATHAN K. LEVINE (SBN: 220289)
ELIZABETH C. PRITZKER (SBN: 146267)
HEATHER P. HAGGARTY (SBN: 244186)
**PRITZKER LEVINE LLP**
180 Grand Avenue, Suite 1390
Oakland, California 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
hph@pritzkerlevine.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Maria Leon, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INTUIT, INC. <br><br> Defendant. | Case No: <br><br> **CLRA VENUE DECLARATION PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)** |

I, Maria Leon, declare as follows:

1.      I have persona knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.      I am the plaintiff in the above-captioned action.

3.      I submit this declaration in support of the above Class Action Complaint ("Complaint") that is based in part of alleged violations of the Consumers Legal Remedies Act, California Civil Code Section 1750, *et. seq*.

4.      The Complaint has been filed in the proper place for trial of this action.

5.      Defendant Intuit Inc. has its principal place of business in Mountain View, California, located within Santa Clara County.  Intuit conducts substantial business within Santa Clara County, including the acts and practices at issue in the Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on May 23, 2019 in Oakland, California.

By: 

Maria Leon